IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA.

CIVIL DIVISION

\* \* \*

| | | |
|---|---|---|
| CHRISTINE BIROS, | ) | No. 4886 of 2017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| U LOCK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

\* \* \*

HEARD: Friday, May 20, 2022

BEFORE: The Honorable Harry F. Smail, Jr., Judge

\* \* \*

TRANSCRIPT OF MOTION TO AMEND THE RECORD
AND MOTION FOR SANCTIONS

\* \* \*

A P P E A R A N C E S:

On behalf of the Plaintiff:

WILLIAM E. OTTO, ESQ.

On behalf of the Defendant:

ALAN ROTH, ESQ.

FRIDAY, MAY 20, 2022 - 9:49 A.M.

P R O C E E D I N G S

* * *

THE COURT:  Call the case of Christine Biros, plaintiff, versus U Lock, Inc. as defendant.  Case number 4886 of 2017.

Will counsel please enter their appearance for the record.

MR. OTTO:  Your Honor, I'm William Otto representing Christine Biros.

MR. ROTH:  Alan Roth on behalf of U Lock.

THE COURT:  Let's first talk.  The Court is indicating at this particular number, and the Court notes that all appellate rights at this particular number, 4886 of 2017, have been exhausted, that the Court received from a nonparty who has no involvement in the underlying Common Pleas case, nor the Superior Court case, nor the allowance for appeal to the PA Supreme Court case, nor the deferential treatment by the Supreme Court of Pennsylvania for consideration of the Supreme Court of the United States any interest at all filing a notice of appeal at this number.

The Court did receive what is noticed as a notice of appeal, but there's no standing.

Mr. Otto, if you'd like to address that.

1   MR. OTTO:  Your Honor, my only comment is,

2   first of all, that under Rule 2329(3), you have the

3   discretion to deny any request for intervention.  The

4   entry of appearance was filed using a form from family

5   court.  Wasn't even the normal petition for leave to

6   intervene.

7           So, I see no reason why this shouldn't be

8   stricken from the docket.

9           THE COURT:  Okay.  Do you want to make any

10  comment on this Shanni Snyder notice of appeal?

11          MR. ROTH:  No comments.

12          THE COURT:  Do you stand opposed to the oral

13  motion to strike it from the docket?

14          MR. ROTH:  I have no position on that.

15          THE COURT:  That's fine.  That's all I'm

16  asking.  You don't have to take a position.  You can

17  simply say no --

18          MR. ROTH:  No position.

19          THE COURT:  You're not involved in that.

20  Let's get back to Mr. Roth.  I gave you a pretty

21  thorough set of instructions relative to the caption.

22  Did you do anything to correct it?

23          MR. ROTH:  Yes, Your Honor.  I brought it to

24  your office three days ago.  I think it's waiting for

25  your signature to do what you asked to have done.

1        THE COURT:  Let me see here.  I got a notice

2   for bankruptcy.  Then I got your response to the

3   objections, filed.  I have a letter of May 18th from

4   Mr. Otto.  So this is the U Lock motion to correct

5   and/or strike the erroneous caption, correct?

6        MR. ROTH:  Yes.

7        THE COURT:  Did you see that, Mr. Otto?

8        MR. OTTO:  I did.  Given, Your Honor, it

9   looks like it was filed yesterday in the Prothonotary's

10  office, it should have been done several weeks ago.

11       THE COURT:  Right.

12       MR. ROTH:  It was delivered to your office,

13  Your Honor, about three days ago.  However, if I could

14  suggest to the Court --

15       THE COURT:  My understanding is we were here,

16  I think, end of April.

17       MR. OTTO:  22nd of April, Your Honor.

18       THE COURT:  22nd of April.  What took a

19  month?

20       MR. ROTH:  Well, what it was, I was diagnosed

21  with cancer, and that cancer was very far along.  That

22  interrupted everything I was doing.  I was doing all

23  kinds of testing and things.  That's why it took that

24  long to get it done.

25       THE COURT:  Mr. Otto, did you get an

opportunity to review the Order of Court attached to his
motion and do you have any objection to it?

MR. OTTO:  Your Honor, I just --

THE COURT:  As far as the wording is all
I'm --

MR. OTTO:  I saw that you have already
changed it on your order on the 13th.  Based on that,
Your Honor, I didn't look at it any further.

With all due respect to Mr. Roth's action, I
think your order on the 13th of May takes care of the
issue.

THE COURT:  I'll grant in part and deny in
part basically and refer to the order back to the May
13th sui sponte order that I issued.

MR. ROTH:  Yes.

THE COURT:  That issue is completed then.  We
are here today.  Mr. Otto, for the record's sake, would
you like to address your May 18th, 2022, correspondence
just so that we establish it on the record?

MR. OTTO:  Yes.  First of all, as Your Honor
is aware, there's been an involuntary Chapter 7
bankruptcy filing against U Lock.  And under the federal
bankruptcy code, an automatic stay goes into effect.

So, the purpose of this presentation this
morning, Your Honor, I want to make very clear has

nothing to do with U Lock specifically. I'm not asking for you to rule on anything related to U Lock specifically.

But the motion that I submitted to you previously for sanctions included request for sanctions against both Mr. Roth as well as George and Cash Snyder. I would like you to consider those.

Just to point out a couple of things related to our previous hearing, Your Honor. At that hearing, Mr. George Snyder agreed to provide information related to old cars that were on the site. He agreed that he would provide the name of the police officer that he spoke to, as well as copies of various releases he claims he had from car owners. That was to be delivered on the Tuesday following the April 22nd hearing.

I have not received anything from either Mr. Roth -- and I wouldn't expect to receive it directly from Mr. Snyder, but I didn't receive anything from Mr. Roth.

Second, Mr. Snyder said the taxes would be paid on the property. They have not been paid. I don't expect them to get paid now because that is an obligation of U Lock, and it's certainly stayed by the bankruptcy petition.

But I believe that goes to the fact that

1   there have been no commitments made by the principals of

2   U Lock which have been kept, and, of course, the last

3   item is the estate release.  It had to be executed, and

4   that required your action.  Otherwise, it wouldn't have

5   been done until the last couple of days.

6           With that in mind, if you look at the motion

7   that I filed or the information that I filed to

8   supplement your request, there is a summary that shows a

9   number of invoices for -- that came after or -- on or

10  after November 2019.

11          Mr. Roth made the point that he believes any

12  actions of his prior to the date of his bankruptcy

13  petition would have been discharged.  Regardless of

14  whether that's right or not, a substantial amount of

15  what we have complained about took place after that

16  date.

17          You may not recall, Your Honor, but in

18  November we began hearings on his post-trial motions.

19  And subsequent to that he filed appeals in the Superior

20  Court and a Petition for Leave to Appeal to the Supreme

21  Court.  And at every step, he again raised the issue of

22  my client's source of funds.

23          So I believe the motion is still relevant.

24  Even if you exclude the invoices for matters prior to

25  November, it still runs around 8 to $9,000, which

whether that amount would be collectible is up in the
air, Your Honor.  But at least --

THE COURT:  Well, your motion suggests or
your supplemental -- I want to call it right.  Your
evidence in support that was filed supports $14,280, but
your request for sanctions is $20,000.

MR. OTTO:  Yes.

THE COURT:  So we have $5,720 that are not
established.  Your request for that is for damages you
felt your client sustained because of the malfeasance or
behaviors on the other side of the case.  I have to
consider what actual damages are.

And if you follow the precedent law, unless
there's some evidentiary presentation of actual damages
sustained as a result of even misuse of freedom of
speech to the defamatory effect of somebody's
reputation, you would have to represent or present
evidence in support of it, even if it's not the full
request, but enough to establish that I can take actions
on established damages.

Do you have that to present today?

MR. OTTO:  May I speak with my client?

THE COURT:  Sure.

(Indulgence)

MR. OTTO:  Your Honor, I'm not sure we can

quantify anything. With that in mind . . .

THE COURT: That was a concern of mine, obviously for the balance of the demand or request. Because if there's not quantification, I'm precluded by precedent law as to what remedies I can make available within an Order of Court because I don't want to create an automatic additional appellate issue.

MR. OTTO: I understand, Your Honor.

THE COURT: Mr. Roth, obviously at this point in time there's a Chapter 7 bankruptcy that you served me a notice on relative to U Lock, Inc. Now there's a question of whether or not the sanctions can be imposed upon George and Cash Snyder, joint and severally, that are not necessarily protected by the bankruptcy pleading.

So, do you want to respond to that?

MR. ROTH: Well, Your Honor, we believe that the bankruptcy pleading stays all activity in this case, because the case does involve U Lock, and we believe the stay -- and I actually have a copy of the section that grants the stay right here if you want to see that.

THE COURT: If you want to bring that up, I'd be happy to. I want to touch base on one thing. You gave me a Rule of Civil Procedure rule.

MR. OTTO: 2329(3.

1      THE COURT:  That'll save my law clerk time to

2  look it up.

3      MR. ROTH:  I believe that the automatic stay

4  stays all proceedings in this case because U Lock is an

5  active participant in the case.  Therefore, we don't

6  believe that anything should be happening today with

7  regard to these issues.

8      Once the bankruptcy is resolved, then we can

9  come back and revisit these issues then if we need to do

10  that.  And I believe that's how it should happen.

11      THE COURT:  How does your bankruptcy

12  petition, though, in any way void my prior orders for

13  the receipt of deeds and possession of the property

14  since they were prior to the filing of the bankruptcy?

15      MR. ROTH:  Well, first of all, we did not

16  file the bankruptcy.  Shanni Snyder filed the

17  bankruptcy.

18      THE COURT:  No.  She filed a suggestion for

19  bankruptcy, and then apparently somebody received --

20  acknowledged it.

21      MR. ROTH:  Well, what happened is --

22      THE COURT:  My question is, how does she have

23  standing other than the liquidated damages to the labor

24  and wage case that she had in the federal court against

25  U Lock where she doubled her damages because of the

liquidation claim, which I'm aware of to suggest
bankruptcy based on those claims, but how does that
relate back to Shanni Snyder's claims as to the
property, the possession thereof and ownership that
we've already established after the exhaustion of appeal
back to Christine Biros?

MR. ROTH: Well, the bankruptcy -- the
bankruptcy is an involuntarily bankruptcy.

THE COURT: I understand that. But it's
filed by a nonparty.

MR. ROTH: Yes.

THE COURT: As to the relationship of this
case number Christine Biros versus U Lock, Inc., Shanni
Snyder's claims are based from a federal lawsuit under
labor and wage which was defaulted, which kicks in then
the automatic doubling of the damages and liquidated
damages which Judge Colville entered.

So, she has the suggestion of bankruptcy for
U Lock relative to that claim and what they have. But
if properties have already been deeded, transferred and
then are simply up for possession prior to that
bankruptcy being filed, which is the case here, what's
your position on that?

To be quite honest, you're asking us to stay
this automatically for related claims that have nothing

to do with Christine Biros, but they do relate to
U Lock, Incorporated.

MR. ROTH: Well, because of the automatic
stay, which you have in front of you, that stays all
proceedings against U Lock. It stays all proceedings.

THE COURT: Okay. And I'll grant you that.
Let's say it stays it from the date it was filed before
the U.S. Bankruptcy Court, which is April 28th, 2022. I
issued orders before that granting the deeds to
Christine Biros and the properties to her prior to the
bankruptcy. So the automatic stay doesn't protect that.

MR. ROTH: I'm not saying that it does. I
understand what you're saying.

THE COURT: So she can continue to move for
possession of her properties that she owns by deed,
because that's prior to the bankruptcy. That's not a
protected field under the automatic stay, because the
claim was made after the events that transpired and
after the exhaustion of the appeals through the state
system and your allowance for consideration to enter
into the federal system. And you didn't do it.

MR. ROTH: I believe that the stay covers any
of these proceedings today. I believe that that's what
the stay does.

THE COURT: But you don't have an Order of

1  Court that tells me it does.  You just have the U.S.

2  Code Title 11 Subsection 362.  But that doesn't stay

3  prior events before the date of the bankruptcy

4  proceeding.  Or the filing thereof.

5           MR. ROTH:  It stays all actions against

6  U Lock.

7           THE COURT:  Those actions are done.  That's

8  what I'm trying to say.  They are not proceedings that

9  are going on.  She already has the ownership of the

10  property.  So therefore -- and by right, it's her

11  property.  Now she can remove off anybody that she sees

12  as a squatter on her property by eviction, because

13  that's -- it's prior to the bankruptcy, unless you have

14  some case that indicates to me this real property is at

15  issue.

16           But the real property isn't even at issue in

17  the bankruptcy because it's not even an asset on April

18  the 28th, 2022 at 4:53 p.m. when Shanni Snyder filed

19  this.

20           MR. ROTH:  We still believe the stay applies.

21  If you disagree with that --

22           THE COURT:  Well, if I disagree with that and

23  I enter an order to that effect, obviously you can have

24  it reviewed by the bankruptcy court judge, who then

25  could, under the supremacy clause, indicate to the state

1    court that an order issue suspending that possession.

2            But I think you're going to have to establish

3    with the Western District Bankruptcy Court a precedent

4    that indicates that or something statutorily that

5    applies under U.S. Code 11 Subsection 362 that is a

6    mandate that applies to a state enforcement of prior

7    conduct which is completed before the bankruptcy begins.

8            That's the dilemma.  It's the timing of when

9    the bankruptcy began.  I think you would be correct here

10   if this thing started prior to my April -- I believe

11   22nd Order of Court.  If it was prior to the April 22nd

12   Order of Court of 2022, then you would have standing to

13   say I'm automatically stayed.  This came in six days

14   after that order went into effect.

15           MR. ROTH:  I understand.

16           THE COURT:  And you don't have an appellate

17   order by mandamus or king's bench that says I must stay

18   the allowance of the state action below because all the

19   appeals are exhausted.

20           MR. ROTH:  I understand what you're saying.

21           THE COURT:  Correct?

22           MR. ROTH:  We still submit we should have the

23   protection.

24           THE COURT:  I understand.  Mr. Otto.

25           MR. OTTO:  Your Honor, if you would issue

1  such an order, that would help us in the bankruptcy

2  court.

3          THE COURT:  I think that's your third request

4  essentially is that the bankruptcy doesn't affect the

5  April 22nd, 2022, Order of Court for the deeds and

6  possession.

7          MR. OTTO:  Right.

8          THE COURT:  Okay.  I think it does confound

9  you on the taxes.  It does confound you on the vehicles.

10         MR. OTTO:  That's the order related to Shanni

11  Snyder.  Or the rule.

12         THE COURT:  Anything further that you would

13  like on the record for today?

14         I'm going to take all this under advisement.

15  I am going to look into the bankruptcy U.S. Code Title

16  11 Subsection 362 to see if there's any binding by the

17  supremacy clause as to events that transpired before the

18  bankruptcy.  Because that's the real issue.  And if it

19  does bind me and I don't have the authority and/or

20  jurisdiction, then I'll agree with your automatic stay

21  and I'm done.

22         But if there's not, then I think that the

23  Court will find that the April 22nd, 2022, Order of

24  Court can still proceed because the bankruptcy came

25  afterwards.

1    MR. OTTO:  Your Honor, there is a recent

2    change to the bankruptcy code.  I'm not a bankruptcy

3    attorney, so I don't have the citation.  But it relates

4    to stays or the impact of stays on expired leases.

5    The reason for the change was that when a

6    tenant's lease expired, a tenant would often file a

7    bankruptcy petition to delay their eviction process.

8    So, the change in the bankruptcy code provided that if

9    the lease has expired, then the automatic stay does not

10   apply to efforts to regain possession.

11   I don't know the extent to which that applies

12   in this situation, but it is certainly an analogous case

13   where the debtor or U Lock has no right to the property.

14   THE COURT:  You would assume that the

15   eviction here would more or less mirror a landlord

16   tenant like lease?

17   MR. OTTO:  Yes.  That's my point, Your Honor.

18   MR. ROTH:  I can tell the Court that I've

19   done hundreds of bankruptcies, and I don't believe that

20   what he's arguing is going to apply to this particular

21   case.

22   THE COURT:  See, I would tend to agree with

23   you if it was within the time frame subsequent to the

24   filing of the bankruptcy.

25   MR. ROTH:  I understand.

1          THE COURT:  Then I think I'm bound

2    automatically.  There's this question of six days before

3    I enter an order, because the appellate process or the

4    Commonwealth of Pennsylvania and then one allowance into

5    the federal statement wasn't utilized.

6          So the question is, does that escape the

7    automatic stay of the bankruptcy and is permissibly

8    permitted to proceed in the form of an eviction for

9    possession?

10          He's saying even after a bankruptcy is filed

11   under a landlord/tenant type lease expired, the

12   automatic stay doesn't apply.  I'm concerned that it

13   applies even less to an event that transpired before the

14   bankruptcy than subsequent to.  And that's our dilemma.

15          Would you prefer to have leave to brief this

16   particular issue from both sides and submit that?

17          MR. OTTO:  Your Honor --

18          THE COURT:  It wouldn't have to be anything

19   significant.

20          MR. OTTO:  On one hand, I would love the

21   opportunity to do that.  I'm also reluctant to cause my

22   client to have to spend more money to respond to

23   arguments which I believe are nonsense.

24          I have no problem, if Your Honor would like,

25   I can get the citation and any cases and provide them to

1    both you and Mr. Roth.

2            THE COURT:  Instead of a brief, legal

3    memorandum that would be in the form of a letter that

4    can be exchanged between counsel.

5            MR. ROTH:  I can do it that way.

6            THE COURT:  Here's my issue:  What I would

7    like to do is I would like to have it in short order.  I

8    don't want this languishing.  Could you have it by close

9    of business next Friday at 5 p.m.?

10           MR. OTTO:  Yes, Your Honor.

11           THE COURT:  That would give you all of next

12   week, five business days to get it together, but seven

13   days from today.

14           And it doesn't have to be in the form of a

15   brief or anything, just a legal memorandum by

16   correspondence of any citations you want me to look at

17   or review so that Caitlin, my law clerk, and I can look

18   at those items and consider your argument that the

19   automatic stay is imposed upon me.

20           I would consider Mr. Otto's position that it

21   is not imposed upon me and does not subject my

22   authority.  Is that agreeable?

23           MR. ROTH:  That's fine.

24           THE COURT:  We'll allow you to do that.  I'm

25   going to look at everything in the intervening time, and

1  then I'll defer ruling until after I receive the legal

2  memorandums.  The earlier you get them to me, the

3  earlier I can issue orders.

4          But in reference to the Shanni Snyder case, I

5  am going to issue an order relative to that that is

6  permissible by Pennsylvania Rules of Civil Procedure if

7  I feel that it's my duty to do so.

8          MR. OTTO:  Thank you, Your Honor.

9          MR. ROTH:  Could I just add a little bit

10  about his request for sanctions and the amount?

11          THE COURT:  Okay.  Yes.

12          MR. ROTH:  All right.  I point out when

13  preliminary objections were filed by Mr. Otto, he filed

14  five or six issues in those preliminary objections.  The

15  Court ruled on one of those.

16          Now they're making a claim and they're trying

17  to tack costs for all of this research on all of these

18  issues.

19          THE COURT:  My question to you, Mr. Roth, is

20  why didn't you file a response to his motion that would

21  calculate down off of his billable time of $14,280,

22  which I don't think should even be considered?

23          MR. ROTH:  Well --

24          THE COURT:  If that's your argument now,

25  obviously I don't have the time this morning because of

1   subsequent hearings that are coming up to go line by

2   line down to challenge his billable rate or his time.

3          MR. OTTO:  Your Honor, with all due respect,

4   as I said earlier, and Mr. Roth isn't looking at it

5   obviously, but my summary, if you exclude the time prior

6   to November 19th, it takes out the preliminary

7   objections.  From November 19 on was post-trial action.

8   There's a summary --

9          THE COURT:  If you look --

10         MR. OTTO:  Next page.  A little forward.  A

11  little more.

12         THE COURT:  A.

13         MR. OTTO:  And the dates are on the left-hand

14  column, Your Honor.  So if you exclude, I think, the

15  first three lines, then you get to November, my November

16  invoices.

17         THE COURT:  There's a $1050 there.

18         MR. OTTO:  The first couple were prior to the

19  November time frame.

20         THE COURT:  I see.

21         MR. OTTO:  So even if you take Mr. Roth's

22  argument about preliminary objections, that's excluded

23  from what I've said this morning.

24         THE COURT:  I see.  So there would be about,

25  looks like $3,025.  If you take those --

| | |
|---|---|
| 1 | MR. OTTO: I believe it's around 8,000, Your |
| 2 | Honor. It's -- |
| 3 | THE COURT: I'm just looking at the summary. |
| 4 | Oh, I see what you're seeing. The value of hours. |
| 5 | MR. OTTO: Right. |
| 6 | THE COURT: If you look at that, that's about |
| 7 | $18,000. |
| 8 | MR. OTTO: Well, no. If you look at the |
| 9 | fourth date down, that's 11-2-2019. And then go across |
| 10 | all the way to the far right-hand corner and total those |
| 11 | three numbers. It's around $10,000. |
| 12 | THE COURT: I see. Okay. |
| 13 | MR. OTTO: And that excludes, as Mr. Roth was |
| 14 | concerned about, my time for preliminary objections. In |
| 15 | fact, that excludes everything through trial. |
| 16 | THE COURT: Okay. I'm trying to follow you, |
| 17 | but your numbers aren't reconciling with my numbers. |
| 18 | Even if I take those four summation numbers to the far |
| 19 | right -- |
| 20 | MR. OTTO: If you look on the far left |
| 21 | column, you see there's one billing for 11-7-2019. The |
| 22 | remaining three items are for billings after trial. If |
| 23 | you go to the far right hand, there's a number 205 plus |
| 24 | 7,000 plus 1050. Those are the numbers I'm now asking |
| 25 | for sanctions for. |

1      THE COURT:  I see.  Okay.  So there's a

2  modification then from the 14,280, because those are not

3  the preliminary objections or, if you will, prediscovery

4  hours billed.

5      MR. OTTO:  Yes.  And that is -- while I don't

6  agree with Mr. Roth's summary as to the effectiveness of

7  his bankruptcy filing, those three numbers there are

8  post his petition filing and are not discharged.

9  Whatever his theory is.

10      THE COURT:  I will -- and that will be from

11  11-7 of '19 to the conclusion of that summation.

12      MR. OTTO:  Yes, Your Honor.

13      THE COURT:  With that modification and

14  adjustment, Mr. Roth, it goes from the 14,280, then it

15  appears to be between 8 or 9,000 dollars for the claim

16  now.

17      Are you still saying there's something else

18  that should be shaved off of it?

19      MR. ROTH:  I would like to say this:  For the

20  amount of time he's claiming, he's claiming six or seven

21  times the amount of time that I spent on the appeal and

22  the post-trial motions.  That just doesn't seem

23  realistic.

24      Appeal and post-trial motions take time.  But

25  he's taking six or seven times what my time was, and I

1  don't think that's a fair analysis of the amount of time

2  that he really would have spent on those things.

3  THE COURT:  I think that goes to the weight

4  that I would put into it by experience being on the

5  bench, by being a practicing solo attorney being in

6  private practice, as to whether that has reasonableness

7  or not.

8  So whatever weight and consideration I would

9  give it to a modification based upon your assertion that

10  it's unreasonable as far as his statement.  Different

11  practices address different issues with different

12  insight and time.

13  I don't know how many times he had to meet

14  with his client to gain information.  That would have

15  added to his response time.  There's a lot of factors

16  that would have come into it.  Is there a whole load of

17  research that you had to look into issues?

18  MR. OTTO:  I had to not only read the cases

19  that he cited, I had to prepare my own brief.

20  Quite frankly, Your Honor, his brief was so

21  disjointed, I had to reorder the whole thing in order to

22  make sense of it for appellate purposes and for your

23  purposes.

24  THE COURT:  Okay.  I'll give it the weight

25  and credibility that I believe is reasonable and uses

1    common sense relative to that.  Thank you very much.

2            Anything further from counsel?

3            MR. ROTH:  Nothing, Your Honor.

4            THE COURT:  All right.  We're concluded and

5    adjourned.  I'll be looking for legal memorandums by

6    5 o'clock next Friday.

7            MR. OTTO:  Thank you very much, Your Honor.

8

9            PROCEEDINGS ADJOURNED AT 10:25 A.M.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

* * *

I hereby certify that the proceedings are
contained fully and accurately in the notes taken by me
at the hearing of the within cause and that this copy is
a true and correct transcript of the same.


Lori Lewandowski, RPR
Official Court Reporter

## $

**$10,000** [1] - 21:11
**$1050** [1] - 20:17
**$14,280** [2] - 8:5, 19:21
**$18,000** [1] - 21:7
**$20,000** [1] - 8:6
**$3,025** [1] - 20:25
**$5,720** [1] - 8:8
**$9,000** [1] - 7:25

## '

**'19** [1] - 22:11

## 1

**1050** [1] - 21:24
**10:25** [1] - 24:9
**11** [3] - 13:2, 14:5, 15:16
**11-2-2019** [1] - 21:9
**11-7** [1] - 22:11
**11-7-2019** [1] - 21:21
**13th** [2] - 5:7, 5:10, 5:14
**14,280** [2] - 22:2, 22:14
**18th** [2] - 4:3, 5:18
**19** [1] - 20:7
**19th** [1] - 20:6

## 2

**20** [2] - 1:11, 2:1
**2017** [3] - 1:4, 2:6, 2:15
**2019** [1] - 7:10
**2022** [8] - 1:11, 2:1, 5:18, 12:8, 13:18, 14:12, 15:5, 15:23
**205** [1] - 21:23
**22nd** [7] - 4:17, 4:18, 6:15, 14:11, 15:5, 15:23
**2329(3** [2] - 3:2, 9:25
**28th** [2] - 12:8, 13:18

## 3

**362** [3] - 13:2, 14:5, 15:16

## 4

**4886** [3] - 1:4, 2:6, 2:15
**4:53** [1] - 13:18

## 5

**5** [2] - 18:9, 24:6

## 7

**7** [2] - 5:21, 9:10
**7,000** [1] - 21:24

## 8

**8** [2] - 7:25, 22:15
**8,000** [1] - 21:1

## 9

**9,000** [1] - 22:15
**9:49** [1] - 2:1

## A

**A.M** [2] - 2:1, 24:9
**accurately** [1] - 25:9
**acknowledged** [1] - 10:20
**action** [4] - 5:9, 7:4, 14:18, 20:7
**actions** [4] - 7:12, 8:19, 13:5, 13:7
**active** [1] - 10:5
**activity** [1] - 9:18
**actual** [2] - 8:12, 8:14
**add** [1] - 19:9
**added** [1] - 23:15
**additional** [1] - 9:7
**address** [3] - 2:25, 5:18, 23:11
**adjourned** [1] - 24:5
**ADJOURNED** [1] - 24:9
**adjustment** [1] - 22:14
**advisement** [1] - 15:14
**affect** [1] - 15:4
**afterwards** [1] - 15:25
**ago** [3] - 3:24, 4:10, 4:13
**agree** [3] - 15:20, 16:22, 22:6
**agreeable** [1] - 18:22
**agreed** [2] - 6:10, 6:11
**air** [1] - 8:2
**ALAN** [1] - 1:24
**Alan** [1] - 2:11
**allow** [1] - 18:24
**allowance** [4] - 2:18, 12:20, 14:18, 17:4

**AMEND** [1] - 1:15
**amount** [6] - 7:14, 8:1, 19:10, 22:20, 22:21, 23:1
**analogous** [1] - 16:12
**analysis** [1] - 23:1
**AND** [1] - 1:15
**appeal** [7] - 2:18, 2:22, 2:24, 3:10, 11:5, 22:21, 22:24
**Appeal** [1] - 7:20
**appeals** [2] - 7:19, 12:19, 14:19
**appearance** [2] - 2:7, 3:4
**appellate** [5] - 2:14, 9:7, 14:16, 17:3, 23:22
**applies** [5] - 13:20, 14:5, 14:6, 16:11, 17:13
**apply** [3] - 16:10, 16:20, 17:12
**April** [10] - 4:16, 4:17, 4:18, 6:15, 12:8, 13:17, 14:10, 14:11, 15:5, 15:23
**arguing** [1] - 16:20
**argument** [3] - 18:18, 19:24, 20:22
**arguments** [1] - 17:23
**assertion** [1] - 23:9
**asset** [1] - 13:17
**assume** [1] - 16:14
**AT** [1] - 24:9
**attached** [1] - 5:1
**attorney** [2] - 16:3, 23:5
**authority** [2] - 15:19, 18:22
**automatic** [12] - 5:23, 9:7, 10:3, 11:16, 12:3, 12:11, 12:17, 15:20, 16:9, 17:7, 17:12, 18:19
**automatically** [3] - 11:25, 14:13, 17:2
**available** [1] - 9:5
**aware** [2] - 5:21, 11:1

## B

**balance** [1] - 9:3
**bankruptcies** [1] - 16:19
**Bankruptcy** [2] - 12:8, 14:3
**bankruptcy** [42] -

**4:2, 5:22, 5:23, 6:24, 7:12, 9:10, 9:14, 9:18, 10:8, 10:11, 10:14, 10:16, 10:17, 10:19, 11:2, 11:7, 11:8, 11:18, 11:22, 12:11, 12:16, 13:3, 13:13, 13:17, 13:24, 14:7, 14:9, 15:1, 15:4, 15:15, 15:18, 15:24, 16:2, 16:7, 16:8, 16:24, 17:7, 17:10, 17:14, 22:7**
**base** [1] - 9:23
**based** [4] - 5:7, 11:2, 11:14, 23:9
**BEFORE** [1] - 1:12
**began** [2] - 7:18, 14:9
**begins** [1] - 14:7
**behalf** [3] - 1:20, 1:23, 2:11
**behaviors** [1] - 8:11
**believes** [1] - 7:11
**below** [1] - 14:18
**bench** [2] - 14:17, 23:5
**between** [2] - 18:4, 22:15
**billable** [2] - 19:21, 20:2
**billed** [1] - 22:4
**billing** [1] - 21:21
**billings** [1] - 21:22
**bind** [1] - 15:19
**binding** [1] - 15:16
**BIROS** [1] - 1:4
**Biros** [6] - 2:4, 2:10, 11:6, 11:13, 12:1, 12:10
**bit** [1] - 19:9
**bound** [1] - 17:1
**brief** [7] - 17:15, 18:2, 18:15, 23:19, 23:20
**bring** [1] - 9:22
**brought** [1] - 3:23
**business** [2] - 18:9, 18:12

## C

**Caitlin** [1] - 18:17
**calculate** [1] - 19:21
**cancer** [2] - 4:21
**caption** [2] - 3:21, 4:5
**car** [1] - 6:14
**care** [1] - 5:10
**cars** [1] - 6:11

**case** [17] - 2:4, 2:5, 2:17, 2:18, 2:19, 8:11, 9:18, 9:19, 10:4, 10:5, 10:24, 11:13, 11:22, 13:14, 16:12, 16:21, 19:4
**cases** [2] - 17:25, 23:18
**Cash** [2] - 6:6, 9:13
**certainly** [2] - 6:23, 16:12
**certify** [1] - 25:8
**challenge** [1] - 20:2
**change** [3] - 16:2, 16:5, 16:8
**changed** [1] - 5:7
**Chapter** [2] - 5:21, 9:10
**CHRISTINE** [1] - 1:4
**Christine** [6] - 2:4, 2:10, 11:6, 11:13, 12:1, 12:10
**citation** [2] - 16:3, 17:25
**citations** [1] - 18:16
**cited** [2] - 23:19
**cIVIL** [1] - 1:2
**Civil** [5] - 9:24, 19:6
**claim** [5] - 11:1, 11:19, 12:18, 19:16, 22:15
**claiming** [2] - 22:20
**claims** [5] - 6:14, 11:2, 11:3, 11:14, 11:25
**clause** [2] - 13:25, 15:17
**clear** [1] - 5:25
**clerk** [2] - 10:1, 18:17
**client** [4] - 8:10, 8:22, 17:22, 23:14
**client's** [1] - 7:22
**close** [1] - 18:8
**Code** [3] - 13:2, 14:5, 15:15
**code** [3] - 5:23, 16:2, 16:8
**collectible** [1] - 8:1
**column** [2] - 20:14, 21:21
**Colville** [1] - 11:17
**coming** [1] - 20:1
**comment** [2] - 3:1, 3:10
**comments** [1] - 3:11
**commitments** [1] - 7:1
**common** [1] - 24:1
**Common** [1] - 2:17

**COMMON** [1] - 1:1
**Commonwealth** [1] - 17:4
**complained** [1] - 7:15
**completed** [2] - 5:16, 14:7
**concern** [1] - 9:2
**concerned** [2] - 17:12, 21:14
**concluded** [1] - 24:4
**conclusion** [1] - 22:11
**conduct** [1] - 14:7
**confound** [2] - 15:8, 15:9
**consider** [4] - 6:7, 8:12, 18:18, 18:20
**consideration** [3] - 2:20, 12:20, 23:8
**considered** [1] - 19:22
**contained** [1] - 25:9
**continue** [1] - 12:14
**copies** [1] - 6:13
**copy** [2] - 9:20, 25:10
**corner** [1] - 21:10
**correct** [6] - 3:22, 4:4, 4:5, 14:9, 14:21, 25:11
**correspondence** [2] - 5:18, 18:16
**costs** [1] - 19:17
**counsel** [3] - 2:7, 18:4, 24:2
**COUNTY** [1] - 1:1
**couple** [3] - 6:8, 7:5, 20:18
**course** [1] - 7:2
**Court** [24] - 2:12, 2:13, 2:16, 2:17, 2:19, 2:20, 2:21, 2:23, 4:14, 5:1, 7:20, 7:21, 9:6, 12:8, 13:1, 14:3, 14:11, 14:12, 15:5, 15:23, 15:24, 16:18, 19:15, 25:15
**COURT** [65] - 1:1, 2:4, 2:12, 3:9, 3:12, 3:15, 3:19, 4:1, 4:7, 4:11, 4:15, 4:18, 4:25, 5:4, 5:12, 5:16, 8:3, 8:8, 8:23, 9:2, 9:9, 9:22, 10:1, 10:11, 10:18, 10:22, 11:9, 11:12, 12:6, 12:14, 12:25, 13:7, 13:22, 14:16, 14:21, 14:24, 15:3, 15:8, 15:12,

16:14, 16:22, 17:1, 17:18, 18:2, 18:6, 18:11, 18:24, 19:11, 19:19, 19:24, 20:9, 20:12, 20:17, 20:20, 20:24, 21:3, 21:6, 21:12, 21:16, 22:1, 22:10, 22:13, 23:3, 23:24, 24:4
**court** [5] - 3:5, 10:24, 13:24, 14:1, 15:2
**covers** [1] - 12:22
**create** [1] - 9:6
**credibility** [1] - 23:25

## D

**damages** [8] - 8:9, 8:12, 8:14, 8:20, 10:23, 10:25, 11:16, 11:17
**date** [5] - 7:12, 7:16, 12:7, 13:3, 21:9
**dates** [1] - 20:13
**days** [7] - 3:24, 4:13, 7:5, 14:13, 17:2, 18:12, 18:13
**debtor** [1] - 16:13
**deed** [1] - 12:15
**deeded** [1] - 11:20
**deeds** [3] - 10:13, 12:9, 15:5
**defamatory** [1] - 8:16
**defaulted** [1] - 11:15
**Defendant** [2] - 1:8, 1:23
**defendant** [1] - 2:5
**defer** [1] - 19:1
**deferential** [1] - 2:19
**delay** [1] - 16:7
**delivered** [2] - 4:12, 6:14
**demand** [1] - 9:3
**deny** [2] - 3:3, 5:12
**diagnosed** [1] - 4:20
**different** [3] - 23:10, 23:11
**dilemma** [2] - 14:8, 17:14
**directly** [1] - 6:17
**disagree** [2] - 13:21, 13:22
**discharged** [2] - 7:13, 22:8
**discretion** [1] - 3:3
**disjointed** [1] - 23:21
**District** [1] - 14:3
**DIVISION** [1] - 1:2
**docket** [2] - 3:8, 3:13
**dollars** [1] - 22:15

done [7] - 3:25, 4:10, 4:24, 7:5, 13:7, 15:21, 16:19
**doubled** [1] - 10:25
**doubling** [1] - 11:16
**down** [2] - 19:21, 20:2, 21:9
**due** [2] - 5:9, 20:3
**duty** [1] - 19:7

## E

**effect** [4] - 5:23, 8:16, 13:23, 14:14
**effectiveness** [1] - 22:6
**efforts** [1] - 16:10
**either** [1] - 4:16
**end** [1] - 4:16
**enforcement** [1] - 14:6
**enter** [4] - 2:7, 12:20, 13:23, 17:3
**entered** [1] - 11:17
**entry** [1] - 3:4
**erroneous** [1] - 4:5
**escape** [1] - 17:6
**ESQ** [2] - 1:21, 1:24
**essentially** [1] - 15:4
**establish** [3] - 5:19, 8:19, 14:2
**established** [3] - 8:9, 8:20, 11:5
**estate** [1] - 7:3
**event** [1] - 17:13
**events** [3] - 12:18, 13:3, 15:17
**eviction** [4] - 13:12, 16:7, 16:15, 17:8
**evidence** [2] - 8:5, 8:18
**evidentiary** [1] - 8:14
**exchanged** [1] - 18:4
**exclude** [3] - 7:24, 20:5, 20:14
**excluded** [1] - 20:22
**excludes** [2] - 21:13, 21:15
**executed** [1] - 7:3
**exhausted** [2] - 2:15, 14:19
**exhaustion** [2] - 11:5, 12:19
**expect** [2] - 6:17, 6:22
**experience** [1] - 23:4
**expired** [4] - 16:4, 16:6, 16:9, 17:11
**extent** [1] - 16:11

## F

**fact** [2] - 6:25, 21:15
**factors** [1] - 23:15
**fair** [1] - 23:1
**family** [1] - 3:4
**far** [7] - 4:21, 5:4, 21:10, 21:18, 21:20, 21:23, 23:10
**federal** [5] - 5:22, 10:24, 11:14, 12:21, 17:5
**felt** [1] - 8:10
**field** [1] - 12:17
**file** [3] - 10:16, 16:6, 19:20
**filed** [16] - 3:4, 4:3, 4:9, 7:7, 7:19, 8:5, 10:16, 10:18, 11:10, 11:22, 12:7, 13:18, 17:10, 19:13
**filing** [7] - 2:21, 5:22, 10:14, 13:4, 16:24, 22:7, 22:8
**fine** [2] - 3:15, 18:23
**first** [6] - 2:12, 3:2, 5:20, 10:15, 20:15, 20:18
**five** [2] - 18:12, 19:14
**follow** [2] - 8:13, 21:16
**following** [1] - 6:15
**FOR** [1] - 1:15
**form** [4] - 3:4, 17:8, 18:3, 18:14
**forward** [1] - 20:10
**four** [1] - 21:18
**fourth** [1] - 21:9
**frame** [2] - 16:23, 20:19
**frankly** [1] - 23:20
**freedom** [1] - 8:15
**Friday** [3] - 1:11, 18:9, 24:6
**FRIDAY** [1] - 2:1
**front** [1] - 12:4
**full** [1] - 8:18
**fully** [1] - 25:9
**funds** [1] - 7:22

## G

**gain** [1] - 23:14
**George** [3] - 6:6, 6:10, 9:13
**given** [1] - 4:8
**grant** [2] - 5:12, 12:6
**granting** [1] - 12:9
**grants** [1] - 9:21

## H

**hand** [4] - 17:20, 20:13, 21:10, 21:23
**happy** [1] - 9:23
**Harry** [1] - 1:12
**HEARD** [1] - 1:11
**hearing** [4] - 6:9, 6:15, 25:10
**hearings** [2] - 7:18, 20:1
**help** [1] - 15:1
**hereby** [1] - 25:8
**honest** [1] - 11:24
**Honor** [30] - 2:9, 3:1, 3:23, 4:8, 4:13, 4:17, 5:3, 5:8, 5:20, 5:25, 6:9, 7:17, 8:2, 8:25, 9:8, 9:17, 14:25, 16:1, 16:17, 17:17, 17:24, 18:10, 19:8, 20:3, 20:14, 21:2, 22:12, 23:20, 24:3, 24:7
**Honorable** [1] - 1:12
**hours** [2] - 21:4, 22:4
**hundreds** [1] - 16:19

## I

**impact** [1] - 16:4
**imposed** [3] - 9:12, 18:19, 18:21
**IN** [1] - 1:1
**INC** [1] - 1:7
**Inc** [3] - 2:5, 9:11, 11:13
**included** [1] - 6:5
**Incorporated** [1] - 12:2
**indicate** [1] - 13:25
**indicates** [2] - 13:14, 14:4
**indicating** [1] - 2:13
**indulgence** [1] - 8:24
**information** [3] - 6:10, 7:7, 23:14
**insight** [1] - 23:12
**instead** [1] - 18:2
**instructions** [1] - 3:21
**interest** [1] - 2:21
**interrupted** [1] - 4:22
**intervene** [1] - 3:6
**intervening** [1] - 18:25
**intervention** [1] - 3:3
**invoices** [3] - 7:9, 7:24, 20:16
**involuntarily** [1] - 11:8

**2**

**involuntary** [1] - 5:21
**involve** [1] - 9:19
**involved** [1] - 3:19
**involvement** [1] - 2:16
**issue** [13] - 5:11, 5:16, 7:21, 9:7, 13:15, 13:16, 14:1, 14:25, 15:18, 17:16, 18:6, 19:3, 19:5
**issued** [2] - 5:14, 12:9
**issues** [6] - 10:7, 10:9, 19:14, 19:18, 23:11, 23:17
**item** [1] - 7:3
**items** [2] - 18:18, 21:22

## J

**joint** [1] - 9:13
**Jr** [1] - 1:12
**judge** [1] - 13:24
**Judge** [2] - 1:12, 11:17
**jurisdiction** [1] - 15:20

## K

**kept** [1] - 7:2
**kicks** [1] - 11:15
**kinds** [1] - 4:23
**king's** [1] - 14:17

## L

**labor** [2] - 10:23, 11:15
**landlord** [1] - 16:15
**landlord/tenant** [1] - 17:11
**languishing** [1] - 18:8
**last** [2] - 7:2, 7:15
**law** [4] - 8:13, 9:5, 10:1, 18:17
**lawsuit** [1] - 11:14
**lease** [4] - 16:6, 16:9, 16:16, 17:11
**leases** [1] - 16:4
**least** [1] - 8:2
**leave** [2] - 3:5, 17:15
**Leave** [1] - 7:20
**left** [2] - 20:13, 21:20
**left-hand** [1] - 20:13
**legal** [4] - 18:2, 18:15, 19:1, 24:5
**less** [2] - 16:15,

17:13
**letter** [2] - 4:3, 18:3
**Lewandowski** [1] - 25:14
**line** [2] - 20:1, 20:2
**lines** [1] - 20:15
**liquidated** [2] - 10:23, 11:16
**liquidation** [1] - 11:1
**load** [1] - 23:16
**LOCK** [1] - 1:7
**Lock** [18] - 2:5, 2:11, 4:4, 5:22, 6:1, 6:2, 6:23, 7:2, 9:11, 9:19, 10:4, 10:25, 11:13, 11:19, 12:2, 12:5, 13:6, 16:13
**look** [12] - 5:8, 7:6, 10:2, 15:15, 18:16, 18:17, 18:25, 20:9, 21:6, 21:8, 21:20, 23:17
**looking** [1] - 20:4, 21:3, 24:5
**looks** [2] - 4:9, 20:25
**Lori** [1] - 25:14
**love** [1] - 17:20

## M

**malfeasance** [1] - 8:10
**mandamus** [1] - 14:17
**mandate** [1] - 14:6
**matters** [1] - 7:24
**MAY** [1] - 2:1
**meet** [1] - 23:13
**memorandum** [2] - 18:3, 18:15
**memorandums** [2] - 19:2, 24:5
**mind** [2] - 7:6, 9:1
**mine** [1] - 9:2
**mirror** [1] - 16:15
**misuse** [1] - 8:15
**modification** [3] - 22:2, 22:13, 23:9
**money** [1] - 17:22
**month** [1] - 4:19
**morning** [3] - 5:25, 19:25, 20:23
**motion** [8] - 3:13, 4:4, 5:2, 6:4, 7:6, 7:23, 8:3, 19:20
**MOTION** [2] - 1:15, 1:15
**motions** [3] - 7:18, 22:22, 22:24
**move** [1] - 12:14

**MR** [67] - 2:9, 2:11, 3:1, 3:11, 3:14, 3:18, 3:23, 4:6, 4:8, 4:12, 4:17, 4:20, 5:3, 5:6, 5:15, 5:20, 8:7, 8:22, 8:25, 9:8, 9:17, 9:25, 10:3, 10:15, 10:21, 11:7, 11:11, 12:3, 12:12, 12:22, 13:5, 13:20, 14:15, 14:20, 14:22, 14:25, 15:7, 15:10, 16:1, 16:17, 16:18, 16:25, 17:17, 17:20, 18:5, 18:10, 18:23, 19:8, 19:9, 19:12, 19:23, 20:3, 20:10, 20:13, 20:18, 20:21, 21:1, 21:5, 21:8, 21:13, 21:20, 22:5, 22:12, 22:19, 23:18, 24:3, 24:7
**must** [1] - 14:17

## N

**name** [1] - 6:12
**necessarily** [1] - 9:14
**need** [1] - 10:9
**next** [4] - 18:9, 18:11, 20:10, 24:6
**nonparty** [2] - 2:16, 11:10
**nonsense** [1] - 17:23
**normal** [1] - 3:5
**notes** [2] - 2:14, 25:9
**nothing** [3] - 6:1, 11:25, 24:3
**notice** [5] - 2:22, 2:24, 3:10, 4:1, 9:11
**noticed** [1] - 2:23
**November** [8] - 7:10, 7:18, 7:25, 20:6, 20:7, 20:15, 20:19
**number** [7] - 2:6, 2:13, 2:15, 2:22, 7:9, 11:13, 21:23
**numbers** [6] - 21:11, 21:17, 21:18, 21:24, 22:7

## O

**o'clock** [1] - 24:6
**objection** [1] - 5:2
**objections** [7] - 4:3, 19:13, 19:14, 20:7, 20:22, 21:14, 22:3
**obligation** [1] - 6:23
**obviously** [5] - 9:3, 9:9, 13:23, 19:25,

20:5
**OF** [3] - 1:1, 1:15
**office** [3] - 3:24, 4:10, 4:12
**officer** [1] - 6:12
**Official** [1] - 25:15
**often** [1] - 16:6
**old** [1] - 6:11
**once** [1] - 10:8
**one** [5] - 9:23, 17:4, 17:20, 19:15, 21:21
**opportunity** [2] - 5:1, 17:21
**opposed** [1] - 3:12
**oral** [1] - 3:12
**Order** [7] - 5:1, 9:6, 12:25, 14:11, 14:12, 15:5, 15:23
**order** [14] - 5:7, 5:10, 5:13, 5:14, 13:23, 14:1, 14:14, 14:17, 15:1, 15:10, 17:3, 18:7, 19:5, 23:21
**orders** [3] - 10:12, 12:9, 19:3
**otherwise** [1] - 7:4
**OTTO** [36] - 1:21, 2:9, 3:1, 4:8, 4:17, 5:3, 5:6, 5:20, 8:7, 8:22, 8:25, 9:8, 9:25, 14:25, 15:7, 15:10, 16:1, 16:17, 17:17, 17:20, 18:10, 19:8, 20:3, 20:10, 20:13, 20:18, 20:21, 21:1, 21:5, 21:8, 21:13, 21:20, 22:5, 22:12, 23:18, 24:7
**Otto** [5] - 2:9, 2:25, 4:4, 4:7, 4:25, 5:17, 14:24, 19:13
**Otto's** [1] - 18:20
**own** [1] - 23:19
**owners** [1] - 6:14
**ownership** [2] - 11:4, 13:9
**owns** [1] - 12:15

## P

**p.m** [2] - 13:18, 18:9
**PA** [2] - 1:1, 2:18
**page** [1] - 20:10
**paid** [2] - 6:21, 6:22
**part** [2] - 5:12, 5:13
**participant** [1] - 10:5
**particular** [4] - 2:13, 2:14, 16:20, 17:16
**Pennsylvania** [3] - 2:20, 17:4, 19:6

**permissible** [1] - 19:6
**permissibly** [1] - 17:7
**permitted** [1] - 17:8
**Petition** [1] - 7:20
**petition** [6] - 3:5, 6:24, 7:13, 10:12, 16:7, 22:8
**place** [1] - 7:15
**Plaintiff** [2] - 1:5, 1:20
**plaintiff** [1] - 2:5
**pleading** [2] - 9:15, 9:18
**Pleas** [1] - 2:17
**PLEAS** [1] - 1:1
**plus** [2] - 21:23, 21:24
**point** [5] - 6:8, 7:11, 9:9, 16:17, 19:12
**police** [1] - 6:12
**position** [5] - 3:14, 3:16, 3:18, 11:23, 18:20
**possession** [8] - 10:13, 11:4, 11:21, 12:15, 14:1, 15:6, 16:10, 17:9
**post** [5] - 7:18, 20:7, 22:8, 22:22, 22:24
**post-trial** [4] - 7:18, 20:7, 22:22, 22:24
**practice** [1] - 23:6
**practices** [1] - 23:11
**practicing** [1] - 23:5
**precedent** [3] - 8:13, 9:5, 14:3
**precluded** [1] - 9:4
**prediscovery** [1] - 22:3
**prefer** [1] - 17:15
**preliminary** [6] - 19:13, 19:14, 20:6, 20:22, 21:14, 22:3
**prepare** [1] - 23:19
**present** [2] - 8:17, 8:21
**presentation** [2] - 5:24, 8:14
**pretty** [1] - 3:20
**previous** [1] - 6:9
**previously** [1] - 6:5
**principals** [1] - 7:1
**private** [1] - 23:6
**problem** [1] - 17:24
**Procedure** [2] - 9:24, 19:6
**proceed** [2] - 15:24, 17:8

**proceeding** [1] - 13:4

**PROCEEDINGS** [1] - 24:9

**proceedings** [6] - 10:4, 12:5, 12:23, 13:8, 25:8

**process** [2] - 16:7, 17:3

**properties** [3] - 11:20, 12:10, 12:15

**property** [9] - 6:21, 10:13, 11:4, 13:10, 13:11, 13:12, 13:14, 13:16, 16:13

**protect** [1] - 12:11

**protected** [2] - 9:14, 12:17

**protection** [1] - 14:23

**Prothonotary's** [1] - 4:9

**provide** [3] - 6:10, 6:12, 17:25

**provided** [1] - 16:8

**purpose** [1] - 5:24

**purposes** [2] - 23:22, 23:23

**put** [1] - 23:4

## Q

**quantification** [1] - 9:4

**quantify** [1] - 9:1

**quite** [2] - 11:24, 23:20

## R

**raised** [1] - 7:21

**rate** [1] - 20:2

**read** [1] - 23:18

**real** [3] - 13:14, 13:16, 15:18

**realistic** [1] - 22:23

**really** [1] - 23:2

**reason** [2] - 3:7, 16:5

**reasonable** [1] - 23:25

**reasonableness** [1] - 23:6

**receipt** [1] - 10:13

**receive** [4] - 2:23, 6:17, 6:18, 19:1

**received** [3] - 2:16, 6:16, 10:19

**recent** [1] - 16:1

**reconciling** [1] - 21:17

**RECORD** [1] - 1:15

**record** [3] - 2:8, 5:19, 15:13

**record's** [1] - 5:17

**refer** [1] - 5:13

**reference** [1] - 19:4

**regain** [1] - 16:10

**regard** [1] - 10:7

**regardless** [1] - 7:13

**relate** [2] - 11:3, 12:1

**related** [5] - 6:2, 6:8, 6:10, 11:25, 15:10

**relates** [1] - 16:3

**relationship** [1] - 11:12

**relative** [5] - 3:21, 9:11, 11:19, 19:5, 24:1

**release** [1] - 7:3

**releases** [1] - 6:13

**relevant** [1] - 7:23

**reluctant** [1] - 17:21

**remaining** [1] - 21:22

**remedies** [1] - 9:5

**remove** [1] - 13:11

**reorder** [1] - 23:21

**Reporter** [1] - 25:15

**represent** [1] - 8:17

**representing** [1] - 2:10

**reputation** [1] - 8:17

**request** [9] - 3:3, 6:5, 7:8, 8:6, 8:9, 8:19, 9:3, 15:3, 19:10

**required** [1] - 7:4

**research** [2] - 19:17, 23:17

**resolved** [1] - 10:8

**respect** [2] - 5:9, 20:3

**respond** [2] - 9:16, 17:22

**response** [3] - 4:2, 19:20, 23:15

**result** [1] - 8:15

**review** [2] - 5:1, 18:17

**reviewed** [1] - 13:24

**revisit** [1] - 10:9

**right-hand** [1] - 21:10

**rights** [1] - 2:14

**ROTH** [33] - 1:24, 2:11, 3:11, 3:14, 3:18, 3:23, 4:6, 4:12, 4:20, 5:15, 9:17, 10:3, 10:15, 10:21, 11:7, 11:11, 12:3, 12:12, 12:22, 13:5, 13:20, 14:15, 14:20, 14:22,

16:18, 16:25, 18:5, 18:23, 19:9, 19:12, 19:23, 22:19, 24:3

**Roth** [12] - 2:11, 3:20, 6:6, 6:17, 6:19, 7:11, 9:9, 18:1, 19:19, 20:4, 21:13, 22:14

**Roth's** [3] - 5:9, 20:21, 22:6

**RPR** [1] - 25:14

**rule** [3] - 6:2, 9:24, 25:11

**Rule** [2] - 3:2, 9:24

**ruled** [1] - 19:15

**Rules** [1] - 19:6

**ruling** [1] - 7:25

**runs** [1] - 7:25

## S

**sake** [1] - 5:17

**SANCTIONS** [1] - 1:15

**sanctions** [6] - 6:5, 8:6, 9:12, 19:10, 21:25

**save** [1] - 10:1

**saw** [1] - 5:6

**second** [1] - 6:20

**section** [1] - 9:20

**see** [12] - 3:7, 4:1, 4:7, 9:21, 15:16, 16:22, 20:20, 20:24, 21:4, 21:12, 21:21, 22:1

**seeing** [1] - 21:4

**seem** [1] - 22:22

**sees** [1] - 13:11

**sense** [2] - 23:22, 24:1

**served** [1] - 9:10

**set** [1] - 3:21

**seven** [3] - 18:12, 22:20, 22:25

**several** [1] - 4:10

**severally** [1] - 9:13

**Shanni** [7] - 3:10, 10:16, 11:3, 11:13, 13:18, 15:10, 19:4

**shaved** [1] - 22:18

**short** [1] - 18:7

**shows** [1] - 7:8

**side** [1] - 8:11

**sides** [1] - 17:16

**signature** [1] - 3:25

**significant** [1] - 17:19

**simply** [2] - 3:17, 11:21

**site** [1] - 6:11

**situation** [1] - 16:12

**six** [5] - 14:13, 17:2, 19:14, 22:20, 22:25

**Small** [1] - 1:12

**Snyder** [10] - 3:10, 6:6, 6:10, 6:18, 6:20, 9:13, 10:16, 13:18, 15:11, 19:4

**Snyder's** [2] - 11:3, 11:14

**solo** [1] - 23:5

**source** [1] - 7:22

**specifically** [2] - 6:1, 6:3

**speech** [1] - 8:16

**spend** [1] - 17:22

**spent** [2] - 22:21, 23:2

**sponte** [1] - 5:14

**squatter** [1] - 13:12

**stand** [1] - 3:12

**standing** [3] - 2:24, 10:23, 14:12

**started** [1] - 14:10

**state** [4] - 12:19, 13:25, 14:6, 14:18

**statement** [2] - 17:5, 23:10

**States** [1] - 2:21

**statutorily** [1] - 14:4

**stay** [18] - 5:23, 9:20, 9:21, 10:3, 11:24, 12:4, 12:11, 12:17, 12:22, 12:24, 13:2, 13:20, 14:17, 15:20, 16:9, 17:7, 17:12, 18:19

**stayed** [2] - 6:23, 14:13

**stays** [8] - 9:18, 10:4, 12:4, 12:5, 12:7, 13:5, 16:4

**step** [1] - 7:21

**still** [6] - 7:23, 7:25, 13:20, 14:22, 15:24, 22:17

**stricken** [1] - 3:8

**strike** [2] - 3:13, 4:5

**subject** [1] - 18:21

**submit** [2] - 14:22, 17:16

**submitted** [1] - 6:4

**Subsection** [3] - 13:2, 14:5, 15:16

**subsequent** [4] - 7:19, 16:23, 17:14, 20:1

**substantial** [1] - 7:14

**suggest** [2] - 4:14, 11:1

**suggestion** [2] - 10:18, 11:18

**suggests** [1] - 8:3

**sui** [1] - 5:14

**summary** [5] - 7:8, 20:5, 20:8, 21:3, 22:6

**summation** [2] - 21:18, 22:11

**Superior** [2] - 2:17, 7:19

**supplement** [1] - 7:8

**supplemental** [1] - 8:4

**support** [2] - 8:5, 8:18

**supports** [1] - 8:5

**supremacy** [2] - 13:25, 15:17

**Supreme** [4] - 2:18, 2:19, 2:20, 7:20

**suspending** [1] - 14:1

**sustained** [2] - 8:10, 8:15

**system** [2] - 12:20, 12:21

## T

**tack** [1] - 19:17

**taxes** [2] - 6:20, 15:9

**tenant** [2] - 16:6, 16:16

**tenant's** [1] - 16:6

**tend** [1] - 16:22

**testing** [1] - 4:23

**that'll** [1] - 10:1

**THE** [66] - 1:1, 1:15, 2:4, 2:12, 3:9, 3:12, 3:15, 3:19, 4:1, 4:7, 4:11, 4:15, 4:18, 4:25, 5:4, 5:12, 5:16, 8:3, 8:8, 8:23, 9:2, 9:9, 9:22, 10:1, 10:11, 10:18, 10:22, 11:9, 11:12, 12:6, 12:14, 12:25, 13:7, 13:22, 14:16, 14:21, 14:24, 15:3, 15:8, 15:12, 16:14, 16:22, 17:1, 17:18, 18:2, 18:6, 18:11, 18:24, 19:11, 19:19, 19:24, 20:9, 20:12, 20:17, 20:20, 20:24, 21:3, 21:6, 21:12, 21:16, 22:1, 22:10, 22:13, 23:3, 23:24, 24:4

**theory** [1] - 22:9

**therefore** [2] - 10:5,

13:10
**thereof** [2] - 11:4, 13:4
**third** [1] - 15:3
**thorough** [1] - 3:21
**three** [6] - 3:24, 4:13, 20:15, 21:11, 21:22, 22:7
**timing** [1] - 14:8
**Title** [2] - 13:2, 15:15
**TO** [1] - 1:15
**today** [6] - 5:17, 8:21, 10:6, 12:23, 15:13, 18:13
**together** [1] - 18:12
**took** [3] - 4:18, 4:23, 7:15
**total** [1] - 21:10
**touch** [1] - 9:23
**transcript** [1] - 25:11
**TRANSCRIPT** [1] - 1:15
**transferred** [1] - 11:20
**transpired** [3] - 12:18, 15:17, 17:13
**treatment** [1] - 2:19
**trial** [6] - 7:18, 20:7, 21:15, 21:22, 22:22, 22:24
**true** [1] - 25:11
**trying** [3] - 13:8, 19:16, 21:16
**Tuesday** [1] - 6:15
**type** [1] - 17:11

## U

**U.S** [4] - 12:8, 13:1, 14:5, 15:15
**under** [8] - 3:2, 5:22, 11:14, 12:17, 13:25, 14:5, 15:14, 17:11
**underlying** [1] - 2:17
**United** [1] - 2:21
**unless** [2] - 8:13, 13:13
**unreasonable** [1] - 23:10
**up** [5] - 8:1, 9:22, 10:2, 11:21, 20:1
**uses** [1] - 23:25
**utilized** [1] - 17:5

## V

**value** [1] - 21:4
**various** [1] - 6:13
**vehicles** [1] - 15:9
**versus** [2] - 2:5,

11:13
**void** [1] - 10:12
**vs** [1] - 1:6

## W

**wage** [2] - 10:24, 11:15
**waiting** [1] - 3:24
**week** [1] - 18:12
**weeks** [1] - 4:10
**weight** [3] - 23:3, 23:8, 23:24
**Western** [1] - 14:3
**WESTMORELAND** [1] - 1:1
**whole** [2] - 23:16, 23:21
**WILLIAM** [1] - 1:21
**William** [1] - 2:9
**wording** [1] - 5:4

## Y

**yesterday** [1] - 4:9